Hon. Vito J. Castellano Major General Chief of Staff to the Governor State of New York Division of Military and Naval Affairs
You have asked whether the chief executive of a county, city, town or village may, pursuant to section 24 of the Executive Law, "State and Local Natural and Man-Made Disaster Preparedness", proclaim a local state of emergency in the event of disaster, rioting, catastrophe or similar public emergency in regard to a State university facility or other State-owned property that is within the territorial limits of the local government.
Section 24 (1) of the Executive Law provides in pertinent part:
 "[I]n the event of a disaster, rioting, catastrophe, or similar public emergency within the territorial limits of any county, city, town or village, or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby, such chief executive may proclaim a local state of emergency within any part or all of the territorial limits of such local government." (Emphasis added.)
The section makes no distinction with regard to the ownership of property. As long as the property is within the territorial limits of the locality and the other requirements of section 24 (1) are met, the local chief executive may declare a state of emergency with respect to State-owned property, including a State university facility in his locality.
You also ask whether and under what circumstances the chief executive of a political subdivision is authorized, pursuant to section 25 of Article 2-B, to utilize school buses in order to cope with a disaster or resulting emergency.
Section 25 (3) provides that a chief executive may request and accept assistance from any other political subdivision and may utilize any real or personal property or personnel on such terms and conditions as may be mutually agreed to by the chief executives of the requesting and assisting political subdivisions. Section 25 (4) provides that upon receipt of a request for assistance, the chief executive of any political subdivision may give, lend or lease any services, equipment, facilities, supplies or other resources of his political subdivision on such terms as he may deem necessary to promote the public welfare and protect the interests of his political subdivision. The chief executive may lease or lend property or transfer personnel only for the purpose of assisting a political subdivision in emergency relief, reconstruction or rehabilitation made necessary by the disaster.
Although Article 2-B does not define a political subdivision, we believe that a school district is a political subdivision entitled to offer assistance pursuant to section 25. There is no uniform definition of a political subdivision in New York State (1977 Op Atty Gen 233, 234). The term is not defined in the General Construction Law (id.). However, a school district is often considered to be a political subdivision. (See,e.g., section 100 (1) of the General Municipal Law.) Moreover, prior provisions which were repealed by Article 2-B defined a political subdivision to include a school district. Section 10 of the Executive Law and sections 60 and 209-o of the General Municipal Law, which were repealed by Article 2-B, included school districts within the definition of a political subdivision. It is unlikely that the Legislature, by omitting a definition of political subdivision from Article 2-B, intended to exclude school districts from participating in disaster planning and relief.
If a school district is a political subdivision within the meaning of section 25 (3), a chief executive may request and accept property or personnel on such terms and conditions as may be mutually agreed to by the chief executive and the school district. Therefore, a chief executive may, in order to cope with a disaster or a resulting emergency, utilize school buses owned by a school district if the school district agrees.
Finally, you have asked whether the Public Health Law, §201 (1) gives either the County or State Health Commissioner legal responsibility and authority to initiate action at a county and/or multi-county level in case of a nuclear incident that results in a disaster covered by sections 24 and 28 of the Executive Law.
Section 201 (1) of the Public Health Law enumerates the functions, powers and duties of the New York State Department of Health. Under section 201, the State Department of Health is responsible for the public health aspects of ionizing radiation. In the event of a nuclear disaster, the State Department of Health is required to respond appropriately. However, section 201 does not give the State exclusive jurisdiction to respond to nuclear disasters.
Article 2-B is predicated on the principle that local governments are the first line of defense in the event of a disaster. It is permissible, under Article 2-B, for either the County or the State Health Commissioner to initiate action at a county level in the event of a nuclear disaster. It is quite possible that local health departments would be the first to respond to a nuclear incident in the affected locality. This is permissible under Article 2-B of the Executive Law and section201 of the Public Health Law.